# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JASON E. KURTZ,

        Petitioner,

    v.                                Case No. 11-C-791

TIM HAINES, Warden of the
Wisconsin Secure Program Facility,

        Respondent.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

## I. PROCEDURAL BACKGROUND

On August 22, 2011, the petitioner, Jason E. Kurtz ("Kurtz"), filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. According to Kurtz's petition (together with the

documents filed therewith) and the respondent's answer to the petition, on February 23, 2006, Kurtz

was convicted by a jury in the Milwaukee County Circuit Court of one count each of first-degree

reckless homicide by the delivery of drugs and delivering designer drugs, less than fifty grams, in

violation of Wis. Stat. §§ 940.02(2)(a) and 961.41(1)(hm)4. On May 2, 2006, the circuit court

sentenced him to thirty-five years imprisonment on the homicide conviction, consisting of twenty

years of initial confinement and fifteen years of extended supervision, and sixteen years of

imprisonment on the drug delivery conviction, consisting of six years of confinement and ten years

of extended supervision, to be served consecutively.

After pursuing a motion for postconviction relief in the circuit court, pursuant to Wis. Stat.

§§ 809.30 and 974.02, Kurtz appealed his conviction and the circuit's order denying his

postconviction motion to the Wisconsin Court of Appeals. In one of his claims, Kurtz argued that

the circuit court erred when it declined to allow his appointed trial counsel to withdraw and to give him a new attorney due to a breakdown in communication between him and his appointed counsel.

In a June 24, 2008 decision, the Wisconsin Court of Appeals concluded that the circuit court had not adequately addressed this issue and remanded to allow the court to conduct an evidentiary hearing and further consider Kurtz's claim. On remand, the circuit court conducted the hearing and denied Kurtz's claim. Kurtz then appealed to the court of appeals, arguing that the circuit court had erred.

On August 18, 2009, the court of appeals affirmed the circuit court's decision. Kurtz then filed a petition for review with the Wisconsin Supreme Court, raising the same claim. On September 21, 2010, the supreme court denied Kurtz's petition for review. Thereafter, and as previously stated, on August 22, 2011, Kurtz filed his federal habeas petition.

There is one claim set forth in Kurtz's habeas petition: "The court was erroneous in forcing an attorney I requested to Dismiss, in full representation. Why must I be forced into one atty, even in conflicts of interests, communication breakdown and indifferences." (Pet. 7).

As of May 16, 2012, the briefing on the claim set forth in Kurtz's original petition was completed. That said, on February 15, 2012, and before the briefing on the claim set forth in the original petition was even begun, much less completed, Kurtz filed a motion to amend his petition to include a claim that he was denied his constitutional right to a fair trial because the trial court failed to sever the two charges of which he was convicted. On February 22, 2012, the respondent filed a response in opposition to the motion to amend the petition, arguing that the claim that Kurtz proposed to pursue was untimely under the one-year statute of limitation of 28 U.S.C. § 2244(d).

The briefing on the claim set forth in Kurtz's original petition and on Kurtz's motion to amend his petition is now completed. For the reasons that follow, Kurtz's motion to amend his

habeas corpus petition will be denied; the one claim asserted in his habeas corpus petition will be denied; and, his habeas corpus petition will be dismissed.

## II.  STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir.1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir.1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.").

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent."  *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000).  A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams v. Taylor*, 529 U.S. 362, 407 (2000) (O'Connor, J., concurring); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004).  Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir.1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The petitioner must have fairly presented his claim to all levels of the state judiciary. *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). This includes presenting a petition for discretionary review to the highest state court, if that option is available to a petitioner. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), *abrogated on other grounds by Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309,

1315 (2012), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996). "If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted." *Guest,* 474 F.3d at 930.

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (Stevens, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 623 (1998). With the foregoing in mind, the court turns to the petitioner's claims.

# III. DISCUSSION

*A. Kurtz's Habeas Corpus Claim*

In its August 18, 2009 decision, the court of appeals described the testimony at the evidentiary hearing and the basis for affirming the circuit court's denial of Kurtz's postconviction motion as follows:

> At the hearing, Kurtz's two trial attorneys, Assistant State Public Defenders Stephen Sargent and Robin Dorman, testified concerning their pretrial relationship with Kurtz. Kurtz also testified.

> Sargent testified that he was appointed in December 2004 and thereafter he discussed plea offers with the State and presented them to Kurtz, but Kurtz was not interested. Sargent said that initially he was able to communicate with Kurtz about trial preparation, strategy and other matters, but this changed when the State amended the charges in September 2005 to include reckless homicide. Sargent testified that one of the reasons Kurtz refused to accept a plea was because he did not want to admit he voluntarily delivered the drugs that killed the victim. Sargent also testified that he thought relating the plea offers to Kurtz soured Kurtz's trust of both attorneys, but that in Sargent's experience such a reaction is not unusual.

> Sargent testified that he filed a motion questioning Kurtz's competency in early November 2005 and then filed a motion to withdraw as counsel later that month. The motion stated the following grounds to withdraw as counsel:

>> 1. Mr. Kurtz has requested that attorney Stephen Sargent remove himself as defense counsel.

>> 2. The defendant does not feel Mr. Sargent is properly representing Mr. Kurtz in this criminal matter.

>> 3. Attorney Sargent has spoken to . . . Mr. Kurtz and has attempted to resolve any differences between attorney and client. Counsel does not feel that the attorney client relationship will improve.

> Dorman joined the defense team in September 2005, shortly after the homicide charge was added. Dorman testified that she believed that accepting one of the plea offers was in Kurtz's best interest and she tried to convince him of that. Dorman said she thought that these efforts led Kurtz to believe she was working for the State rather than for him. She also testified that she discussed with Kurtz the case's strengths and weaknesses, the evidence and the potential witnesses. She was able to relay details about the case to Kurtz and he gave her tasks to perform which

6

she understood. She also told him she did not think he had a high likelihood of success at trial.

Dorman testified concerning her communication with Kurtz. When asked "whether the primary reason for the breakdown in communication was a desire of the defense team that the defendant accept a negotiation," Dorman replied: "I think that was part of it, but I think there had been a breakdown even before I got . . . onto the team . . . when I was just talking about how we were going to approach the homicide defense." She said that raising questions about Kurtz's competency also contributed to the communication problems she had with Kurtz.

Kurtz testified about a letter he wrote to the trial court in November 2005, which stated:

> Hello Judge,
>
> I am writing to you in regards to my current charges and pending trial time. I ask you for a possible adjournment and new defend[a]nt counsel for personal and spiritual reasons, due to confinement, decisions [and] time frames made on each of these, and more. Out of slight personal-emotional constraints I request new counsel. I thank you for your time. Bless you.

(Some capitalization omitted.) Kurtz also testified about his relationship with his attorneys. Although the trial court specifically found Kurtz's testimony was not credible, and although Kurtz's testimony was frequently as difficult to understand as his letter to the trial court, he testified essentially consistently with Sargent's and Dorman's statements that he was not satisfied with the plea offers they received. Kurtz told the court that "[i]f the right plea agreement was offered I would probably optionally considered it [sic]." Kurtz said that in the situation of not being satisfied with the plea offers, his feeling was that the "the next option was to request a new counsel."

The trial court made detailed findings. It found that there was testimony about a breakdown in trust in the context of communicating offers from the State that Kurtz did not accept. Both counsel related a change in the relationship with Kurtz to those offers and indicated, as the court explained, that Kurtz "did not want to plead because he wanted the truth to come out. He believed that the truth would come out and that God would allow the truth to have that happen." The court concluded that Kurtz was trying to say he did not intend to cause the death of the victim and therefore wanted to go to trial. The trial court found that Kurtz went to trial and that he would have done so under any circumstances.

After observing Kurtz testify at the retrospective hearing, the trial court also found Kurtz's testimony "that he was unable to communicate with counsel" was not credible and that Kurtz did not establish that communication "had broken down to the

extent that it impacted and frustrated the presentation of the case." The trial court found that Sargent's motion for a competency evaluation, and the subsequent finding that Kurtz was competent, did not frustrate the defense or infringe on Kurtz's rights, although it may have strained their communication. We conclude that these findings are supported by the record and are not clearly erroneous. Kurtz takes issue with the trial court's decision, arguing the findings are clearly erroneous. We disagree.

Further, we agree with the trial court that the established facts do not constitute a basis to require the appointment of new counsel. Defense counsel has an obligation to present the State's offers to the client and to recommend what counsel believes is in the client's best interest. *See State v. Ludwig*, 124 Wis. 2d 600, 610-11, 369 N.W.2d 722 (1985). Where, as here, the client persistently refuses to accept an offer either because of his personal belief about whether his conduct constitutes the crime with which he has been charged, in spite of what were apparently counsels' attempts to correct his misunderstanding, or because he is seeking a better offer, we agree with the trial court that this does not constitute a "substantial breakdown of communications" justifying a change of counsel. *See Jones*, 306 Wis. 2d 340, ¶ 19.

Kurtz also asserts that the trial court erroneously found that giving Kurtz new counsel would delay the proceedings. We reject this argument. Although the court provided a summary of the case that mentioned adjournments, because no trial date existed at the time Kurtz requested new counsel, we do not read the court's decision as relying on a concern about delay.

Finally, Kurtz argues that the trial court erroneously considered the effectiveness of Sargent and Dorman's representation at trial as evidence that new counsel had not been warranted. We agree that matters that occurred after November 2005 were not relevant to the issue presented at the retrospective hearing. However, we do not agree that the court actually relied on events that occurred after November 2005 in making its decision. The court mentioned the communication that occurred between trial counsel and Kurtz at trial, but then explicitly noted that what happened at trial "is not controlling here, and I'm not suggesting that it is."

For the foregoing reasons, we conclude that the trial court's finding, that Kurtz had not established a substantial breakdown in communications, was not clearly erroneous. Accordingly, the court did not erroneously exercise its discretion when it denied Kurtz's motion for postconviction relief.

(Ct. App. Dec. ¶¶ 10-21, ECF No. 16-9.)

As stated previously, in order for a petitioner to be granted federal habeas corpus relief he must show that he is in custody due to a violation of his rights under the United States Constitution. Thus, in order to decide Kurtz's claim it is necessary to consider whether he has shown that his rights

under the Constitution were violated by the state court's not granting his trial counsel's motion to withdraw.

A criminal defendant is entitled to have legal counsel. The Sixth Amendment grants that right. The defendant did have legal counsel both at his trial and throughout the pretrial proceedings leading to his trial. He claims, however, that his lawyers' motion to withdraw should have been granted and he should have been appointed different counsel. This is because, according Kurtz and his trial counsel, there had been a total breakdown of communication prior to the trial.

On that issue, the trial court conducted an evidentiary hearing, during which hearing Kurtz, as well as both of his court-appointed lawyers, testified. The trial court found that, while the relationship between Kurtz and his lawyers may have been "strained," there was no substantial breakdown of communication between Kurtz and his lawyers. To the contrary, they communicated fine. It just so happens that Kurtz did not like the advice they were giving him. Furthermore, when the lawyers began to have doubts about Kurtz's competency, and thereafter asked for a competency evaluation, Kurtz did not like it. And while such action may have caused Kurtz (according to Kurtz) to lose some trust in his lawyers, it does not mean that he did not communicate meaningfully with them.

In the end, Kurtz wanted to go to trial because he had not been offered the type of plea bargain that he found acceptable. He also wanted to go to trial because he professed to believe that God would let the truth prevail. His decision to go to trial was not consistent with the advice he was receiving from his lawyers. But there was no evidence that the representation given to Kurtz by his lawyers was at any time ineffective, either before or during the trial.

This is an important consideration, because Kurtz had counsel appointed for him due to his indigency. And "an indigent defendant generally has no right to have his counsel of choice

appointed." *Carlson v. Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008). "Thus, when a trial court refuses to appoint new counsel, the defendant can only show a denial of a constitutional right if he can establish that his counsel was ultimately ineffective - that is, he must show prejudice as required by *Strickland v. Washington*, 466 U.S. 668 . . . (1984)." *Id.* To show prejudice under *Strickland*, Kurtz must show that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

S*trickland*, 466 U.S. at 694. Simply stated, Kurtz has failed to show a reasonable probability that, if his lawyers' motion to withdraw had been granted and he had been appointed different counsel, the result of his criminal proceedings would have been different.

To be sure, Kurtz argues in his habeas brief that he was denied effective assistance of counsel. He does so in the following fashion:

> In the present case Kurtz was denied effective assistance of counsel due to a complete breakdown of communication. . . . Without a sense that his attorney was acting free of conflict, Kurtz found it impossible to continue to work with attorney Sargent.

> As noted, this was presented to the court. Despite the fact that the Court had become aware of the conflict that had arisen between counsel and client, nothing was done to ensure that Kurtz's rights would not be violated further. Indeed, the record reflects that counsel went behind Kurtz' back to obtain a plea offer that Kurtz[] didn't want, attempted to use several persons to push Kurtz[] into taking the deal that counsel wanted, publical[l]y humiliated Kurtz by calling his competency into question, and then attempted to leave the case when all this failed.

> Kurtz puts forward that not only was he denied the effective assistance of counsel because there was a clear irreconcilable conflict that chilled the attorney-client communications that are "essential" to the sixth amendment guarantee, but that counsel was so focused on *his* desired outcome that he was in fact laboring under a conflict of interest. That interest being the avoidance of a trial at all costs, despite having a duty of loyalty to his client.

(Pet'r's Br. 10-11; internal citations omitted.)

But Kurtz seems to be equating ineffectiveness of counsel with a claimed breakdown of communication. They are not one and the same. To reiterate, Kurtz has failed to show that his court-appointed trial lawyers were ineffective. There is nothing offered to suggest that his trial counsel was anything but aggressive, thorough and competent during the course of the trial that Kurtz himself demanded that he be given.   Indeed, his counsel at the evidentiary hearing (different counsel from his trial counsel) made clear that Kurtz was not alleging any form of ineffective assistance by his trial counsel:

> Your Honor, the one thing that I would like to just make clear, I know that we have discussed it before, but I don't know if we've discussed it on the record, is that this is not an ineffective- assistance-of-counsel claim.  We are not alleging in any way that Mr. Sargent or Miss Dorman violated their ethical obligations to Mr. Kurtz, the issue here more is – is perception and ability to communicate, rather than anything they did as a mistake.

(ECF No. 17, Ex. 10 at 4-5.)

This position was reiterated by Kurtz's counsel at the close of the evidentiary hearing:

> The issue before the court again is not ineffective assistance of counsel.   The question, in light of the Court of Appeals['] decision, is whether there was a substantial breakdown in communication between the defendant and counsel, and if that is found to have occurred that Mr. Kurtz is entitled to vacation of his conviction and a new trial, the opportunity to plead whatever happens at that point.
>
> . . .
>
> In this case the two lawyers did everything by the book, everything they were supposed to do, but it doesn't matter, perception is as important as reality in a case like this.  The perception here from Mr. Kurtz's point of view is that, they were not listening to me, I can't communicate with them.  So even though they did everything they tried to do, his misperception was that they were not on his side.

(ECF No. 17, Ex. 10 at 127-28)

Furthermore, at no time did Kurtz claim, as he does now, that his attorneys had a conflict of interest.  Even if he had, such claim would have failed.  At best, he argues that he did not want to accept the plea offer that was extended to him and which his lawyers advise that he accept. It often

11

happens that a client chooses not to follow his lawyer's advice. But that a client does not wish to follow his lawyer's advice does not amount to creating a conflict of interest for the lawyer.

The arguments that Kurtz now present are in stark contrast to those that were presented to the state court. As noted above, at no time did he challenge the effectiveness of his trial counsel. At no time did he expressly argue that his lawyers were laboring under a conflict of interest. The only issue that was raised was whether the trial court abused its discretion by not granting his trial counsel's motion to withdraw based on a claimed breakdown of communication.

And, in this regard, the trial court specifically found:

> Kurtz's testimony "that he was unable to communicate with counsel" was not credible and that Kurtz did not establish that communication "had broken down to the extent that it impacted and frustrated the presentation of the case." The trial court found that Segerson's motion for a competency evaluation, and the subsequent finding that Kurtz was competent, did not frustrate the defense or infringe on Kurtz's rights, although it may have strained their communication.

(Ct. App. Dec. ¶ 17, ECF No. 16-9.)

As stated previously, in order to obtain federal habeas relief Kurtz must show that the state court judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Furthermore, issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Simply stated, Kurtz has failed to overcome, by clear and convincing evidence, the presumption of correctness of the state court's finding that there had not been a substantial breakdown of communication. To be sure, he disagrees with such finding. But that is not enough to warrant federal habeas relief.

In conclusion, to the extent that Kurtz's petition for a writ of habeas corpus is predicated on the claim that his trial counsel's motion to withdraw should have been granted and he should have had different counsel appointed for him, his petition will be denied.

12

*B. Motion to Amend Petition*

On February 15, 2012, Kurtz filed a motion to amend his habeas petition to include a claim that his constitutional right to a fair trial was denied because the trial court failed to sever for trial the two counts of the information. The respondent opposes the motion, arguing that such claim is untimely under the one-year statute of limitation of 28 U.S.C. § 2244(d). More precisely, the respondent argues that Kurtz did not file his proposed amended petition until February 15, 2012. This was after the one-year statute of limitation expired on January 18, 2012. According to the respondent,

> this court can only grant Kurtz's request to amend his petition if the claim he wants to add relates back to the claim he raised in his original petition. A claim relates back if it arises from the same "conduct, transaction, or occurrence" as the earlier claim. See Fed. R. Civ. P. 15(c)(1)(B). The claims must share a "common core of operative facts" to satisfy Fed. R. Civ. P. 15(c)(1)(B). *Mayle* [*v. Felix*], 545 U.S. [644,] [] 664 [(2005)]. This does not mean the same trial, conviction, or sentence. *Id*. at 664. . . . Kurtz's new claim does not relate back to his old one because they do not share a common core of operative facts.

(Resp't's Br. 2-3.)

It may very well be that Kurtz's claim challenging the trial court's denying his motion for severance is time-barred. But there is another reason why this court will not grant Kurtz's motion to amend his petition to include such a claim – procedural default. Simply stated, Kurtz never presented the severance issue to the Wisconsin Supreme Court.

There were two issues that were initially presented to the court of appeals: the motion-to-withdraw issue and the severance issue. In its June 24, 2008 order, the court of appeals affirmed the trial court's decision on the severance issue, and remanded the motion-to-withdraw issue so that an evidentiary hearing could be conducted thereon. Neither then, nor after the evidentiary hearing was conducted and the motion-to-withdraw issue was re-presented to the court of appeals, did the petitioner present the severance issue to the Wisconsin Supreme Court for review.

13

In his brief in support of his motion to amend Kurtz states:

> Although Attorney Rapkin continued to represent Kurtz on remand to the Circuit Court, and continued to represent Kurtz up until July 29, 2008, she did not file a petition for review on the severance issue, and did not advise Kurtz or apparently successor counsel that she had failed to file a petition for review in the Wisconsin Supreme Court. Even if she had advised successor counsel of her failure there is no guarantee the Wisconsin Supreme Court would have reinstated the deadline. Because Attorney Rapkin was counsel of record for the duration of time Kurtz' petition for review could have been filed timely, but failed to diligently purs[u]e Kurtz' appeal, Kurtz respectfully request[s] this Court find that the failure to petition for review in the Wisconsin Supreme Court on the severance issue was due to his counsel's negligence and beyond his control.

(Pet.'s Am. Pet. for Writ of Habeas Corpus 6.)

Kurtz's explanation for why the severance issue was not presented to the Wisconsin Supreme Court is insufficient to excuse him from the procedural default doctrine. To reiterate, under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Kurtz has not made such a showing. He ascribes negligence to his attorneys' failure to include the severance issue in their petition for review with the supreme court. But, he provides no factual support for such a bald assertion. Indeed, it is just as plausible that appellate counsel made a tactical decision to not present such issue to the supreme court, perhaps because it was thought to be a meritless issue. In any event, Kurtz has not shown that it was some objective factor external to the defense that impeded counsel's efforts to present the

severance issue to the Wisconsin Supreme Court. Such being the case, he has failed to show cause for the procedural default.

Nor has Kurtz demonstrated that failure to consider the severance claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 623 (1998). And Kurtz has made no effort to demonstrate that he is actually innocent.

In sum, the severance issue has been procedurally defaulted and Kurtz has failed to show that his procedural default should be excused. Thus, this court will not address the severance issue. Kurtz's motion to amend his petition to include such claim will be denied.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of

appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. Thus, for the court to issue a certificate of appealability to Kurtz, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Of course, the court has declined to address the severance issue (which Kurtz seeks to incorporate into these proceedings by amending his petition to include such claim) due to the procedural default of such claim. When, as here, a habeas petition claim is denied on procedural grounds without addressing the prisoner's underlying constitutional claim, a certificate of appealability is issued only if the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Jimenez v. Quarterman,* 555 U.S. 113, 118 n.3 (2009) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). As the Seventh Circuit similarly held, "[i]f success on a non-constitutional issue is essential . . . , and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional

16

question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

In my opinion, and for the reasons set forth in this decision denying Kurtz's claim on his motion-to-withdraw issue, Kurtz's claim on such issue does not warrant a certificate of appealability. Put simply, the petitioner has not shown "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of this claim or that jurists could conclude the issue presented is adequate to deserve encouragement to proceed further. Furthermore, the procedural default of Kurtz's claim on the severance issue is a straightforward question, and this court does not believe that a reasonable jurist would find it debatable whether this court erred in resolving this non-constitutional question. Consequently, the court will deny Kurtz a certificate of appealability on both of his claims.

Of course, Kurtz retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Kurtz's motion to amend his habeas corpus petition be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the claim set forth in Kurtz's habeas corpus petition be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Kurtz's habeas corpus petition and this action be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and here is **DENIED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this <u>26th</u> day of July 2012 at Milwaukee,Wisconsin.

**BY THE COURT**:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge